# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

MARCUS A. CANADA,

                Petitioner,           :    Case No. 2:17-cv-1014

     - vs -                         Chief Judge Edmund A. Sargus, Jr.
                                         Magistrate Judge Michael R. Merz

TIMOTHY BUCHANAN, Warden,
  Noble Correctional Institution,

                                     :
                Respondent.

# REPORT AND RECOMMENDATIONS

       This is a habeas corpus case, brought by Petitioner Marcus Canada *pro se*, to obtain relief

from his convictions in the Franklin County Court of Common Pleas and consequent sentence.

The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 4) and

the Return of Writ (ECF No. 5). Although Chief Magistrate Judge Deavers set a reply date of

twenty-one days after the Return (ECF No. 2, PageID 67), Petitioner has not filed a reply and the

time to do so expired February 12, 2018.

## Litigation History

       A Franklin County, Ohio, grand jury indicted Canada on November 27, 2013, on two

counts of aggravated burglary and one count of felony domestic violence. A trial jury convicted

him on one aggravated burglary count and the domestic violence count, and he was sentenced to

an aggregate term of five years imprisonment. The appellate court affirmed the judgment. *State v. Canada,* 2015-Ohio-2167 (10th Dist. Jun. 4, 2015)("*Canada I*"), appellate jurisdiction declined, 143 Ohio St. 3d 1467 (2015).

Canada filed an Application to Reopen his direct appeal under Ohio R. App. P. 26(B) which the court denied. *State v. Canada*, No. 14AP-523 (10th Dist. Jan. 21, 2016)(unreported; copy at State Court Record, ECF No. 4-1, PageID 480, *et seq*.), appellate jurisdiction declined, 145 Ohio St. 3d 1425 (2016). On July 29, 2015, Canada filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. The trial court denied the petition on the basis of Ohio's criminal *res judicata* doctrine, but the Court of Appeals reversed and remanded. *State v. Canada*, 2016-Ohio-5948 (10th Dist. Sept. 22, 2016). On remand the trial court again dismissed the petition and Canada failed to perfect an appeal.

In the meantime, Canada filed a habeas petition raising ten grounds for relief in this Court. See *Canada v. Warden*, Case No. 2:16-cv-103. That petition was dismissed without prejudice because his state court petition for post-conviction relief was still pending, rendering his habeas claims unexhausted. Those proceedings are now concluded and Canada pleads the same ten grounds for relief here as in his previous petition as follows:

> **Ground One**: Petitioner/Canada is entitled to Habeas Corpus relief on grounds that the state courts committed prejudicial err[or], in violation of the Confrontation Clause, Sixth Amendment, U.S. Constitution, by permitting the assistant prosecuting attorney, to use out-of-court, C.D. recordings, which also deprived Petitioner[] Canada of his right to a fair trial.
>
> **Ground Two**: Appellant was substantially prejudiced against and denied his right to a fair trial in violation of his 6th and 14th Amendment Rights, on grounds that the Ohio courts state courts allowed inadmissible other bad acts into evidence that were not admissible under Evid. R. 403(A).

**Ground Three**: Petitioner's right to a fair trial under the United States [Constitution] was violated when the State engaged in prosecutorial misconduct when the prosecuting attorney denigrante [sic] defense counsel and made improper comments during closing arguments.

**Ground Four**: Petitioner was deprived of a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution, due to ineffective assistance of trial counsel by trial counsel's failure to object to prosecutorial misconduct during closing arguments.

**Ground Five**: Petitioner's constitutional right to a fair trial as guaranteed by the 6th and 14th Amendments to the United States Constitution was violated as a result of the trial court's ruling(s) based on cumulative erroneous evidentiary rulings and improper comments made by the prosecutor during closing arguments deprived Petitioner of a fair trial.

**Ground Six**: The state courts of Ohio committed constitutional error, to the prejudice of petition[er], in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as a result of the fact that Petitioner's conviction rests on insufficient evidence and is against the manifest weight of the evidence.

**Ground Seven**: Petitioner/Canada was deprived of his 6th and 14th Amendment right to effective assistance of counsel on direct appeal, and at trial, as a result of appellate counsel's failure to raise claims on appeal that: (A) trial counsel was "ineffective" by failing to "investigate" the case, prior to a proposed plea bargain offer, pertaining to the existance [sic] of certain 911 C.D. recording(s); and (B) due to the fact that counsel at trial was ineffective during the "plea proceedings," which caused Petitioner to reject the proposed plea offer, and causing Petitioner to suffer "actual prejudice," as a result of ineffective assistance of trial counsel that appellate counsel should have raised on direct appeal, and thus, violated Canada's 6th and 14th Amendment right to effective assistance of counsel on appeal and at trial.

**Ground Eight**: Appellate counsel on direct appeal was ineffective as a result of appellate counsel's failure to raise *all* of the similar claims: (1) defense counsel was ineffective for failing to object to the admissibility of the 911 C.D. recordings, on grounds that prosecutor withheld such evidence from being timely provided, and thus, violated the rule of discovery of evidence; (2) the prosecutor committed prosecutorial misconduct by not providing the evidence

in a timely manner; (3) the trial judge committed a gross abuse of discretion by allowing the introduction of the C.D. recordings to be allowed into the record as evidence, when she was put on notice that defense counsel had just obtained the evidence on the day of trial; (4) Petitioner was deprived of his right to effective assistance of counsel arising out of prosecutorial misconduct, by not providing to the defense with the 911 C.D. tape recordings *until the day of trial*; and (5) Petitioner was denied his right to a *fair trial*, as well as to the right to effective assistance of counsel, resulting from the prosecution's failure to timely provide the actual C.D. recordings over the defense until the day of trial.

**Ground Nine**: Petitioner's Sixth and Fourteenth right to "effective" assistance of counsel at trial was violated, which deprived the Petitioner of his constitutional right to a fair trial, as a result of defense counsel's failure to independently subpoena any witnesses to come to court to testify; and for failing to "investigate" the case prior to the date of trial.

**Ground Ten**: Petitioner's 6th and 14th Amendment Right to the effective assistance of counsel was violated based on grounds that: (A) defense counsel failed to investigate the 911 C.D. recording(s) (prior to the day of trial) for purposes of properly "advising" Canada on accepting the prosecutor's plea deal, which was offered prior to the date of trial; and (B) Canada did not receive "effective" assistance of trial counsel during the "plea negotiations", as a result of the prosecutor's own purposeful delay in furnishing the 911 C.D. tape recordings until after the plea negotiations were offered, which violated Canada's right to the effective assistance of counsel during the plea process proceedings, which also prejudicially affected Canada's choice on going to trial.

(Petition, ECF No. 1.)

# Analysis

**Ground One:  Confrontation Clause**

In his First Ground for Relief, Canada claims his rights under the Confrontation Clause

4

were violated when the trial court permitted the jury to hear recorded telephone calls made by Alicia and Anthony Jenkins on November 9, 2013. The content of those calls was recited by the Tenth District on direct appeal. *Canada I*, 2015-Ohio-2167 at ¶¶ 5-8. The court then decided the related assignment of error as follows:

### A. First Assignment of Error

[*P24] In his first assignment of error, appellant contends the trial court erred in admitting statements made by Alicia and Anthony in the three recorded telephone calls made on November 9, 2013. Despite capiases issued against them, neither Alicia nor Anthony appeared at trial. Appellant argues admission of their out-of-court statements violated the Ohio Rules of Evidence as well as his right to confront the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

[*P25] Prior to the commencement of testimony, defense counsel made an oral motion in limine asking the court to exclude the statements made in the recorded calls on grounds they were testimonial evidence which should be excluded from trial pursuant to his constitutional right to confront witnesses against him. The prosecutor urged admission of the statements under the excited utterance exception to the hearsay rule. After taking a short recess to listen to the calls, the trial court denied appellant's motion. Following presentation of its case, the prosecutor moved to admit State's exhibit No. 19, the CD containing all three calls. Defense counsel objected on grounds that admission of the statements violated Ohio evidentiary rules and state and federal constitutional provisions. The trial court overruled the objection and admitted the CD.

[Discussion of hearsay objection omitted.]

[*P45] Appellant next contends that admission of the statements violated his right to confront the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. We review the question of whether the trial court violated appellant's Confrontation Clause rights under a de novo standard. *State v. Durdin*, 10th Dist. No. 14AP-249, 2014-Ohio-5759, ¶ 15, citing *State v. Rinehart*, 4th

Dist. No. 07CA2983, 2008-Ohio-5770, ¶ 20; *McClain* at ¶ 16, citing *State v. Dennison*, 10th Dist. No. 12AP-718, 2013-Ohio-5535, ¶ 61.

**[\*P46]** "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004). This "bedrock procedural guarantee applies to both federal and state prosecutions." *Id.*, citing *Pointer v. Texas*, 380 U.S. 400, 406, (1965). "'Section 10, Article I [of the Ohio Constitution] provides no greater right of confrontation than the Sixth Amendment.'" *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, ¶ 12, quoting *State v. Self*, 56 Ohio St.3d 73, 79, (1990).

**[\*P47]** In *Crawford*, the United States Supreme Court considered whether the introduction of hearsay statements admissible under state law violated an accused's Sixth Amendment right to confront the witnesses against him. The statements at issue were made in a recorded formal police interrogation. The recorded statements were played for the jury at a trial in which the declarant did not testify. The court held the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54. Although the court did not expressly define "testimonial," it stated that the core class of testimonial statements includes ex parte in-court testimony or its functional equivalent, extrajudicial statements contained in formalized testimonial materials such as affidavits and depositions, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and "[s]tatements taken by police officers in the course of interrogations." *Id.* at 52. The court further stated that the Confrontation Clause does not apply to nontestimonial hearsay. *Id.* at 68.

**[\*P48]** Later, in *Davis v. Washington*, 547 U.S. 813 (2006), the court considered whether a caller's responses to a 911 dispatcher's interrogation were testimonial when the caller failed to appear to testify at trial. The court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at

822. The court assumed, without deciding, that the acts of a 911 operator constituted acts of police. *Id.* at 823, fn.2. The court concluded the 911 caller's hearsay statements were not testimonial and were therefore not barred by the Sixth Amendment. *Id.* at 829. In so concluding, the court reasoned that (1) the statements described the events as they were actually happening, rather than explaining events that had happened in the past, (2) any reasonable listener would conclude the statements were made in the face of an ongoing emergency, (3) the interrogation was objectively necessary to resolve the ongoing emergency, rather than simply to learn what had happened in the past, and (4) the interrogation was informal because it was conducted over the telephone and the answers were provided frantically while in a chaotic and unsafe environment. *Id.* at 827. The court averred the circumstances surrounding the interrogation "objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency. [The caller] simply was not acting as a *witness*; she was not *testifying*." (Emphasis sic.) *Id.* at 828. The Supreme Court of Ohio adopted the *Davis* primary-purpose test in *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, paragraph one of the syllabus.

[*P49] Appellant first contends the statements Alicia made in her first call at 5:33 a.m. were testimonial and, thus, barred by the Confrontation Clause. Specifically, appellant claims the statements fail the second prong of the primary-purpose test "because a reasonable listener would not conclude that [she] was facing an ongoing emergency." (Appellant's Brief, 18.) Appellant generally reiterates the same arguments presented in his challenge to the admission of the statements under the rules of evidence, i.e., that Alicia called a non-emergency police number and she spoke in a calm, matter-of-fact manner. The fact that Alicia called a non-emergency number rather than 911 does not establish there was no ongoing emergency. Alicia called a valid police telephone number and requested officer assistance. Her statements demonstrate that the situation was an emergency. She identified appellant as an "intruder" and reported that he had just kicked in her door and refused to leave. Further, her speaking in a calm manner does not mean there was no ongoing emergency. As we stated above, unlike a situation where a break-in by an unknown intruder might well result in a more emotionally-charged call to police, Alicia was well-acquainted with appellant. The trial court reviewed the call and, thus, was able to listen to the tone and tenor of Alicia's voice. Thus, we conclude Alicia's statements were not testimonial and, therefore, not barred by the Confrontation Clause.

[**\*P50**] Appellant also contends the statements Alicia made in her 7:21 a.m. 911 call were testimonial and, thus, barred by the Confrontation Clause. Appellant first refers to Alicia's statement that appellant kicked in her door at 5:30 that morning. Appellant claims this statement fails the first prong of the primary-purpose test because she "is describing events that happened in the past." (Appellant's Brief, 21.) We disagree. Alicia made the statement in response to the 911 dispatcher's question about what was happening. In an effort to explain the urgency of the current situation and to convince the 911 dispatcher to send the police, Alicia needed to provide some background information regarding appellant's earlier actions. Alicia's statement was not made to prove a past event, but to explain the full nature of her current emergency.

[**\*P51**] Appellant next cites Alicia's later statement that she and her family were outside and away from appellant. Appellant claims this statement fails the second prong of the primary-purpose test because "a reasonable listener would not conclude that she was facing an ongoing emergency." (Appellant's Brief, 21.) Again, we disagree. We first note that Alicia did not state that she and her family were away from appellant. To the contrary, she averred "he's still here." (Tr. 57, State's exhibit No. 19.) Appellant's continued presence at the scene after twice kicking in Alicia's doors and assaulting both Alicia and Anthony arguably establishes an ongoing emergency. This conclusion is buttressed by the 911 dispatcher's admonition to stay away from appellant. Thus, we conclude Alicia's statements were not testimonial and, therefore, not barred by the Confrontation Clause.

*Canada I*, 2015-Ohio-2167.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Respondent defends Ground One on the merits, asserting the Tenth District's decision is entitled to deference under 28 U.S.C. § 2254(d)(1)(Return, ECF No. 5, PageID 1020-21).

In his Petition Canada presented a substantial argument that the trial court erred in its Ohio evidence ruling on hearsay (Petition, ECF No. 1, PageID 17-22). This Court cannot review Ohio evidence law rulings of the state courts because habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J., concurring). A federal habeas court may not re-evaluate a state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*).

Canada also argues the Confrontation Clause point in the Petition (ECF No. 1, PageID 22-26). He quarrels with the Tenth District's findings that the speakers are describing an ongoing emergency, both by claiming that in the second and third calls, they are describing past events and by claiming that Alicia Jenkins was calm during the calls. However, the three calls are made in the course of an ongoing series of events, attempting to obtain police intervention, and Canada's characterization of Alicia as calm in the face of his having kicked in both of her doors and assaulted her and her brother is, to say the least, self-interested.

The Magistrate Judge concludes the Tenth District's decision is not an objectively unreasonable application of *Davis v. Washington*, 547 U.S. 813 (2006). The Tenth District

reasonably determined that Alicia Jenkins and her brother were attempting to obtain police assistance through all three calls. Therefore, the state court decision is entitled to deference under § 2254(d)(1). On that basis, Ground One should be dismissed.

**Ground Two: Bad Acts Evidence**

In his Second Ground for Relief, Canada claims he was denied a fair trial by the admission of other bad acts evidence against him in violation of Ohio R. Evid. 403(A).

Respondent first asserts that this claim is procedurally defaulted because it was never fairly presented to the state courts as a federal constitution claim. (Return, ECF No. 5, PageID 1021-25.) As noted above, Canada has filed no reply, so this argument has not been rebutted.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2004); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

Even if this claim had been properly preserved as a federal constitutional claim, Petitioner would not be entitled to relief on the merits. Cross-examination of a testifying defendant as to prior felony convictions is such an accepted part of American criminal practice that most felony defendants do not testify in their own behalf. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991). This is true even when the other bad acts evidence is introduced in some way other than upon cross-examination of a testifying defendant.

Accordingly, Ground Two should be dismissed as procedurally defaulted or alternatively as without merit.

**Ground Three:  Prosecutorial Misconduct**

In his Third Ground for Relief, Canada asserts he was denied a fair trial by prosecutorial misconduct.  Respondent asserts this Ground for Relief is barred by procedural default in that trial counsel did not object to the complained-of prosecutorial comments in closing .

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "[A]bsent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'"  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman,* 501 U.S., at 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord *Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
. . . .
Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that

> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

In this case, the Tenth District reviewed Canada's prosecutorial misconduct claim for plain error because there had been no contemporaneous objection. *Canada I*, 2015-Ohio-2167 ¶ 70. Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), citing *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), citing *Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). See also *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2009).

An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); accord, *Mason*

*v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Because Canada filed no reply, he has offered no rebuttal to the State's procedural default argument. Assuming he would rely on his attorney's asserted ineffective assistance as providing excusing cause, that argument is rejected in Ground Four below.

Ground Three should be dismissed as procedurally defaulted.

**Ground Four:  Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Canada asserts he received ineffective assistance of trial counsel when his trial attorney failed to object to the prosecutorial misconduct allegedly committed during closing argument.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). See generally Annotation, 26 ALR Fed 218.

Although an Ohio appellate court's plain error review is an enforcement rather than a waiver of a procedural default, its opinion is still entitled to deference under 28 U.S.C. § 2254(d)(1). *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009); *Kittka v. Franks*, 539 Fed. Appx. 668, 672 (6th Cir. 2013); *Bond v. McQuiggan*, 506 Fed. Appx. 493, 498 n. 2 (6th Cir. 2013); *Stojetz v. Ishee*, 2014 U.S. Dist. LEXIS 137501 *231 (S.D. Ohio Sept. 24, 2014)(Frost, D.J.). In this case the Tenth District determined that the complained-of comments by the prosecutor in closing did not amount to prosecutorial misconduct. Therefore, even if objections had been made, it would not have been error for the trial judge to overrule them. It cannot be ineffective assistance of trial counsel to fail to make objections that would have been overruled.

Therefore, Ground Four should be dismissed.

## Ground Five:  Trial Court Cumulative Error

In his Fifth Ground for Relief, Canada claims he was denied a fair trial on the basis of the cumulative errors by the trial court.  However, "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010), quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012).  On that basis Ground Five should be dismissed.

## Ground Six:  Insufficient Evidence/Manifest Weight of the Evidence

In his Sixth Ground for Relief, Canada asserts his conviction is against the manifest weight of the evidence and is not supported by sufficient evidence.  A manifest weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence.  It held:

> In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.  In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  Although a court of appeals may determine that a judgment of

a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387.

The *Thompkins* case is consistent with federal constitutional law. An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge

should be assessed against the elements of the crime, not against the elements set forth in an

erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S.Ct. 709, 715, 193

L.Ed.2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable

doubt, on habeas review, we must still defer to the state appellate
court's sufficiency determination as long as it is not unreasonable.
See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652, 665 (6th Cir. 2008); accord *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(*en*

*banc*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction

based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647,

656 (6th Cir. 2010).

We have made clear that *Jackson* claims face a high bar in federal
habeas proceedings because they are subject to two layers of judicial
deference. First, on direct appeal, "it is the responsibility of the jury
-- not the court -- to decide what conclusions should be drawn from
evidence admitted at trial. A reviewing court may set aside the jury's
verdict on the ground of insufficient evidence only if no rational trier
of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S.
1, ___, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (*per curiam*). And
second, on habeas review, "a federal court may not overturn a state
court decision rejecting a sufficiency of the evidence challenge
simply because the federal court disagrees with the state court. The
federal court instead may do so only if the state court decision was
'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S.
[766], [773], 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(*per curiam*); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (*per curiam*).

Canada raised manifest weight and sufficiency claims together as his Seventh Assignment

of Error on direct appeal and the Tenth District decided the sufficiency claims as follows:

**[*P98]** In his seventh assignment of error, appellant contends his
convictions for aggravated burglary and domestic violence were not
supported by sufficient evidence and were against the manifest
weight of the evidence.

20

**[\*P99]** "In a criminal prosecution, the state bears the burden of proof with respect to each statutory element of an offense." *Abi-Adballah*. The standard for evaluating whether the state has presented sufficient evidence is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259, (1991), paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. *State v. Thompkins*, 78 Ohio St.3d 380, 386, (1997). On review for sufficiency, courts do not assess whether the state's evidence is to be believed, but whether, if believed, the evidence would support a conviction. *Id*. at 390. In determining the sufficiency of the evidence, an appellate court must give "'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *State v. Gordon*, 10th Dist. No. 10AP-1174, 2011-Ohio-4208, ¶ 5, quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Consequently, a verdict will not be disturbed based upon insufficient evidence unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *Id*., citing *Treesh* at 484.

**[\*P100]** We first address appellant's claim that insufficient evidence supported his conviction for aggravated burglary. R.C. 2911.11(A) proscribes aggravated burglary and provides, in relevant part, that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person * * * is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:  (1) [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."

[\*P101] Appellant's sole contention regarding the sufficiency of the evidence is that the state failed to prove he trespassed in Alicia's apartment. "[T]respass is an essential element of aggravated burglary." *State v. O'Neal*, 87 Ohio St.3d 402, 408 (2000). Pursuant to R.C. 2911.21(A)(1), a criminal trespass occurs when a person "without privilege to do so," "[k]nowingly enter[s] or remain[s] on the land or premises of another." R.C. 2901.01(A)(12) defines "[p]rivilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." "Land or premises" includes "any land, building, structure, or place belonging to, controlled by, or in custody of another." R.C. 2911.21(F)(2).

**[\*P102]** Appellant cites his own testimony that he lived with Alicia and paid bills associated with the apartment, along with Shelton's testimony that he removed some of appellant's personal belongings from Alicia's apartment after the incident and that he thought appellant paid some of Alicia's bills, as proof that appellant did not trespass in the apartment. Appellant contends the state provided no evidence contradicting this testimony other than the inadmissible hearsay testimony of Alicia and Anthony in their calls to the police. As noted in our resolution of appellant's first assignment of error, statements made in those calls were properly admitted into evidence.

**[\*P103]** In *O'Neal*, the Supreme Court of Ohio held that "R.C. 2911.21(A)(1), when read in conjunction with R.C. 2911.21(E) [now (F)(2)], establishes that *any* person can indeed commit a trespass against property that belongs to, is controlled by, or is in the custody of, someone else." (Emphasis sic.) *Id.* at 408. Indeed, even "a spouse can be convicted of trespass and aggravated burglary in the dwelling of the other spouse who owns, has custody of, or control over the property where the crime has occurred." *Id.*, citing *State v. Lilly*, 87 Ohio St.3d 97 (1999), paragraph one of the syllabus.

**[\*P104]** In her 5:33 a.m. call to the police station, Alicia referred to appellant as an "intruder," and reported that he "decided to come kick *my* door in and he's standing in *my* living room refusing to leave." (Emphasis added.) (Tr. 52, State's exhibit No. 19.) In his call to 911, Anthony described appellant as "an intruder." In her call to 911, Alicia again reported that appellant "kicked in *my* door at 5:30 in the morning" and "kicked in *my* back door." (Emphasis added.) (Tr. 56, State's exhibit No. 19.) Further, Officers Garrett and Dawson and Detective Rotthoff all testified that their investigations revealed no information that appellant resided at Alicia's apartment. To the contrary, appellant reported his address as 45 Stevens Avenue both when he was arrested and during his interview with police. Alicia's identification of appellant as an "intruder," her references to "my door" and "my living room," along with appellant's action in kicking in the doors and his subsequent reporting of his address as one other than 1842 Noe-Bixby Road, support the conclusion that Alicia exercised sole custody and/or control over the apartment at the time appellant entered and that appellant knowingly entered Alicia's apartment without privilege to do so, thereby committing a trespass in violation of R.C. 2911.21(A)(1). Viewing the evidence in a light most favorable to the prosecution and without making credibility determinations, we conclude the evidence was sufficient to prove the element of

trespass and, by extension, to support the conviction for aggravated burglary in violation of R.C. 2911.11(A)(1).

[*P105] Appellant also contends the evidence was insufficient to support his conviction for domestic violence. R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." As pertinent here, "[p]hysical harm" to a person means "any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3). "Family or household member" includes a person who "has resided with an offender" and was "living as a spouse." R.C. 2919.25(F)(1)(a)(i). As pertinent here, R.C. 2919.25(F)(2) defines "[p]erson living as a spouse," as "a person who * * * has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." Pursuant to R.C. 2919.25(D)(4), if an offender previously has been convicted of two or more offenses of domestic violence, then a violation of R.C. 2919.25(A) is a felony of the third degree.

[*P106] Appellant does not dispute that Alicia is a "family member" or that he previously was convicted of two offenses of domestic violence. Rather, appellant solely contends the state failed to prove he physically harmed or threatened to physically harm Alicia. Appellant argues that no evidence in the record, other than through improperly admitted testimonial hearsay, established that any physical harm occurred. Again, we note that Alicia's call to 911 was properly admitted into evidence. In that call, Alicia reported that appellant "smacked" her. (Tr. 56, State's exhibit No. 19.) Further, Officer Garrett described observing a mark on Alicia's face that suggested she had been slapped, and the state presented photographs depicting a red mark on Alicia's face. More importantly, appellant admitted in his jailhouse call that he slapped Alicia. Viewing the evidence in a light most favorable to the prosecution, and without making credibility determinations, we conclude the evidence was sufficient to prove the element of physical harm and, by extension, to support the conviction for domestic violence in violation of R.C. 2919.25(A).

*Canada I,* 2015-Ohio-2167.

Upon review, the Magistrate Judge concludes the Tenth District's decision on sufficiency of the evidence is neither contrary to nor an objectively unreasonable application of *Jackson*. Although the evidence was not unequivocal about where Canada resided, the gave his address to the police as different from the premises at which he kicked in the doors. And he admitted in a

telephone call from the jail that he slapped Alicia Jenkins.  He now claims that was a lie, but the jury was free to believe it was a true admission,

The Sixth Ground for Relief should therefore be dismissed on the merits.

**Grounds Seven and Eight:  Ineffective Assistance of Appellate Counsel**

In his Seventh Ground for Relief, Canada claims he received ineffective assistance of appellate counsel when his appellate attorney failed to raise as assignments of error that:  (A) trial counsel was "ineffective" by failing to "investigate" the case, prior to a proposed plea bargain offer, pertaining to the existance [sic] of certain 911 CD recording(s); and (B) due to the fact that counsel at trial was ineffective during the "plea proceedings," which caused Petitioner to reject the proposed plea offer, and causing Petitioner to suffer "actual prejudice.

In his Eighth Ground for Relief, Canada claims he received ineffective assistance of appellate counsel when counsel did not raise the following assignments of error:  (1) defense counsel's failure to object to the admissibility of the 911 recordings on grounds that prosecutor withheld such evidence from being timely provided to the defense, thereby violating the rules governing discovery; (2) the prosecutor committed prosecutorial misconduct by not providing the evidence in a timely manner; (3) the trial judge abused her discretion by allowing the introduction of the 911 recordings to be allowed into the record as evidence, knowing that defense counsel had just been provided the evidence on the day of trial; (4) Petitioner's right to effective assistance of counsel was violated by the prosecutor's failure to provide the 911 recordings *until the day of trial*; and (5) Petitioner was denied his right to a *fair trial*, as well as to the right to effective assistance of counsel, resulting from the prosecution's failure to timely provide the actual 911 recordings to

the defense until the day of trial.

In the Return, Respondent concedes that Canada has preserved his ineffective assistance of appellate counsel claims for merits review by filing an Application for Reopening under Ohio R. App. P. 26(B), but asserts the Tenth District's decision on the claims is entitled to deference under *Strickland, supra*. The Tenth District rendered the following decision of these claims:

> {¶ 8} In his first proposed assignment of error, appellant argues that his appellate counsel's performance was deficient inasmuch as counsel did not raise, as an error on appeal, that trial counsel was ineffective for failing to investigate the case prior to advising appellant on plea offers. Specifically, appellant contends that his trial counsel was ineffective by failing to obtain and listen to 911 recordings prior to the date of the trial and by failing to contact the victim and her brother to confirm they would testify at trial. Appellant asserts that he rejected plea offers on the belief that the victim and her brother would testify, and therefore he would be able to establish his residency at the apartment through their cross-examination, thereby disproving the aggravated burglary offenses. Instead, the "secret" 911 recordings used "[i]n place of" the victim's and her brother's testimony tended to show he was an "intruder" to the victim's apartment, and prejudiced the jury against him. . . . Thus, according to appellant, his trial counsel's failure to investigate the 911 calls and confirm trial witnesses caused appellant to reject several proposed plea offers, and appellant believes this error should have been raised on appeal instead of weaker arguments selected by appellate counsel.

> {¶ 9} Regarding the 911 recordings, the record does not support appellant's allegation that trial counsel's performance was deficient in failing to investigate the 911 recordings. Trial counsel requested discovery from the state and, through no fault of his own, did not receive the calls until the morning of trial. The record similarly does not support appellant's allegation that trial counsel's performance was deficient regarding the victim and her brother testifying. The victim and her brother were served with subpoenas, but failed to appear several times. The state, let alone defense counsel, was unable to ascertain whether they would appear at trial.

> {¶ 10} Further, appellant cannot show he was prejudiced by defense counsel's receipt of the 911 recordings on the morning of the trial, or by the lack of cross-examining the victim and her brother. The record shows that appellant was present while the victim called 911,

and the existence of the recordings was disclosed before plea negotiations in the police summary provided by the state. Trial counsel reviewed the calls prior to trial, argued against their admission into evidence, and succeeded in having one call excluded. Further, nothing in the record shows that either the victim or her brother would have testified to appellant residing at the apartment in question on cross-examination, as appellant suggests. Although the state mentioned that the victim did not wish for appellant to go to jail for a long time, it also emphasized that she never wavered from her version of the facts, which included appellant breaking into her residence.

{¶ 11} Shortly after hearing that the victim had not recanted or changed the facts of her story, appellant declined the second plea offer, which featured a jointly recommended sentence with a significant reduction from the possible maximum sentence. Discussing appellant's rejection of the plea offer, trial counsel indicated that despite the reduction offered, appellant "nonetheless * * * has not wavered from his desire to have that trial throughout" and simply "wants to have a trial." . . . Therefore, although appellant now insists otherwise, the record does not show that appellant would have accepted the plea offers had he known that the 911 recordings would be admitted and the victim and her brother would not testify, but rather demonstrates appellant's unwavering desire to proceed with a jury trial.

{¶ 12} In summary, trial counsel was not deficient in regard to investigating the 911 recordings and the victim's testimony, and appellant either cannot show prejudice or relies on evidence outside the record to show prejudice. As such, appellate counsel was not deficient in failing to assign errors related to these points on appeal and, regardless, appellant did not have a reasonable probability of success if the issue had been presented on appeal. *Lee* at ¶ 2; *State v. Coles,* 5th Dist. No. 15CAA010001, 2015-Ohio-4159, ¶ 11, citing *State v. Hartman,* 93 Ohio St.3d 274, 299 (2001) ("A claim requiring proof that exists outside of the trial record cannot appropriately be considered on a direct appeal."). Under these circumstances, appellant's first proposed assignment of error fails to demonstrate a colorable claim of ineffective assistance of appellate counsel to reopen this case.

{¶ 13} In appellant's second proposed assignment of error, appellant argues that his appellate counsel was deficient in failing to raise several more assignments of error related to the prosecutor's provision of the 911 recordings on the day of the trial. Specifically, appellant believes that appellate counsel should have raised as errors

on appeal: that trial counsel was ineffective for failing to object to the 911 recordings on the grounds that that prosecutor withheld the calls in violation of discovery rules; that the prosecutor committed prosecutorial misconduct by not providing the 911 recordings until the day of the trial, which deprived appellant of effective assistance of counsel and a fair trial; and that the trial court abused its discretion by allowing the 911 recordings into evidence.

{¶ 14} Appellant's arguments are rooted in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny or, alternatively, a violation of Crim.R. 16 discovery rules. *Brady* provides that "[t]he prosecutor must * * * provide defendants any evidence that is favorable to them whenever that evidence is material either to their guilt or punishment." *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 96, *cert. denied, Pickens v. Ohio*, _U.S._, _ S.Ct. 193 L.Ed.2d 471, 84 U.S.L.W. 3320 (2015), citing *Brady* at 87. "*Brady* material" may be disclosed during trial and not result in a due process violation, so long as it is disclosed to a defendant in time for its effective use. *Pickens*, citing *State v. Iacona*, 93 Ohio St.3d 83, 100 (2001).

{¶ 15} Crim.R. 16 requires the prosecutor to disclose certain information, including any recorded statement by a witness in the state's case-in-chief, prior to trial upon a proper discovery request made by the defendant. Crim.R. 16(B) and note. Under Crim.R. 16(L), "[t]he trial court: continues to retain discretion to ensure that the provisions of the rule are followed," for example, by giving orders to permit discovery or inspection, granting a continuance, prohibiting the party from introducing in evidence the material not disclosed, or "such other order as it deems just under the circumstances." Crim.R. 16(L) and note. On appeal," '[v]iolations of Crim.R. 16 by the prosecution may result in reversible error only upon a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in preparing a defense, and (3) the accused has suffered prejudice.' " *State v. Payne*, 10th Dist. No. 09AP-107, 2010-0hio-1018, ¶ 35, quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-0hio-2128, ¶ 38, citing *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995).

{¶ 16} Here, the prosecutor provided the 911 recordings to defense counsel on the morning of the trial, prior to the start of trial. The prosecutor stated that he made great efforts in order to receive the 911 recordings from the detectives, and defense counsel believed that the prosecutor was not at fault for the timing of provision of the recordings. Although she did not determine a discovery violation

occurred, the trial court judge offered defense counsel the opportunity to recess for a day. Defense counsel indicated that he had already listened to the recordings, proceeded to pursue arguments against the inclusion of the recordings into evidence, and ultimately succeeding in having one out of four of the recordings excluded. Furthermore, as discussed previously, the recordings indicate that appellant was present while the victim spoke to the 911 operator, and the existence of the recordings was included in the police summary provided as part of discovery.

{¶ 17} Considering the 911 recordings were not favorable to appellant and the state nonetheless provided the recordings in time for defense counsel to argue vigorously against their inclusion, this record does not reveal the prosecution's suppression of exculpatory evidence as proscribed under *Brady*. Further, even assuming that the prosecutor's failure to disclose the 911 recordings until the morning of the trial is a violation of Crim.R. 16, the record does not support reversible error on appeal, but rather supports the determination that the lack of disclosure was inadvertent rather than willful, that appellant had prior knowledge of the 911 calls, and that appellant was not able to establish prejudice, as noted in the first assignment of error.

{¶ 18} As such, appellant has not demonstrated that appellate counsel was deficient in failing to raise issues related to the prosecution's provision of the 911 recordings on the day of trial, including trial counsel's failure to object to this timing and the trial court's exercise of discretion to admit the recordings, or demonstrated that he had a reasonable probability of success if the issue had been presented on appeal.

{¶ 19} Under the circumstances, appellant's second proposed assignment of error fails to demonstrate a colorable claim of ineffective assistance of appellate counsel.

*State v. Canada*, No. 14AP-523 (10th Dist. Jan. 21, 2016)(unreported; copy at State Court Record

ECF No. 4-1, Ex. 19, PageID 483-86).

A criminal defendant is entitled to effective assistance of counsel on appeal as well

as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v.*

*Lucey*, 469 U.S. 387, 394 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d

631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528

U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).

> To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id.*

*Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011). The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004; see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), citing *Joshua,* 341 F.3d at 441; *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999). Counsel can be ineffective by failing to raise a "dead-bang winner," defined as an issue which is obvious from the trial record and which would have resulted in a reversal on appeal, even if counsel raised other strong but unsuccessful claims. *Mapes, supra,* citing *Banks v. Reynolds*, 54 F. 3d 1508, 1515 n.13 (10th Cir.

1995); see also *Page v. United States*, 884 F. 2d 300, 302 (7th Cir. 1989). Stated differently, failure to raise a significant and obvious claim can amount to reversible error. *Mapes v. Tate*, 388 F.3d 187, 192 (6th Cir. 2004).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), citing *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland,* quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000), citing *Strickland*. "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [that] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

Upon review, the Magistrate Judge concludes that the Tenth District's decision on these ineffective assistance of appellate counsel claims is neither contrary to nor an objectively unreasonable application of *Strickland*. Canada's claim that it was ineffective assistance of trial counsel to fail to investigate the 911 recordings prior to trial is belied by the evidence before the Court of Appeals, which Canada emphasizes as true, that the recordings were not produced to defense counsel until the day of trial. Since they were in police custody, it is unclear how defense counsel could have "investigated" them. The prosecutor insisted and was apparently believed by

defense counsel that the prosecutor himself did not receive them until just before trial. Canada avers his understanding was that Alicia Jenkins and her brother were going to come to trial and support his claim that he lived with her, but he points to no record corroboration of that understanding. The trial judge offered a continuance because of the later production of the recordings, but the defense did not accept that offer.

Based on this analysis, the Seventh and Eighth Grounds for Relief should be dismissed.

## Grounds Nine and Ten: Ineffective Assistance of Trial Counsel

In his Ninth and Tenth Grounds for Relief, Canada asserts he received ineffective assistance of trial counsel when his trial attorney (1) failed to subpoena any witnesses for trial, (2) failed to investigate the case prior to trial, and (3) failed to investigate the 911 recordings for purposes of advising Canada on plea offers. He also asserts that the prosecutor's purposeful delay in furnishing the 911 recordings deprived him of the effective assistance of counsel in plea negotiations.

Respondent asserts these claims are procedurally defaulted because they could have been presented on direct appeal and were not, thereby becoming barred under Ohio's criminal *res judicata* doctrine (Return, ECF No. 5). Having filed no reply, Canada has not rebutted this defense. To the extent Canada raised these claims in his Petition for post-conviction relief, the trial court actually enforce the *res judicata* bar against him and he failed to perfect an appeal from that decision.

Grounds Nine and Ten should be dismissed as procedurally defaulted.

**Conclusion**

On the basis for the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 6, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).